Thank you, Your Honor. May it please the Court, Nicholas Markey on behalf of Petitioner Bernardo Perez-Cruz. Your Honors, there are two issues that sit before this Court today. One issue was raised by this Court by its order dated last year to address voluntary departure. I'm sorry, could you keep your voice up? I will try, Your Honor. I lost my voice yesterday. Okay, well, take the mic down closer to you. That will make your life easier. You can actually put it down. Oh, you just turned it up? Okay. Thank you, Your Honor. Your Honor, there are two issues before this Court. One dealing with whether the stop rule of 240 AD 1 applies to Mr. Perez, and two, whether the Board of Immigration's decision on it, second decision in Mr. Perez's case, was that he should be granted voluntary departure. As this Court's aware, the voluntary departure order was entered by the judge after Mr. Perez had gone up to the BIA the first time. And on the second time around, the Board did not specifically address voluntary departure, but it did affirm the judge's decision in its decision denying cancellation or removal. My arguments will be brief, Your Honors, in this. It is our position that the time, the stop time rule does not apply to Mr. Perez. The reason being is, as indicated in our briefs, for the stop time rule to apply to him, he must fall within one of the prerequisites convictions under 212A2. Now, it's our position, and Campos-Torres, a BIA decision, affirms that this conviction, or the premise that if it doesn't come under 212A, it does not stop time. Now, as the Court's aware, the stop time rule stops continuous presence at either the commission of the crime or the issuance of the NTA. In the Anston case, the commission of the crime was in April 2000. The NTA was issued in June of 2000. It's our position that because this is an assault DV domestic violence case, it does not come under the prerequisites to stop time. The government seems to argue saying, well, you're looking at the wrong factors. The fact of the matter is the NTA was issued in 2000, therefore, from 1996, when Mr. Perez became a permanent resident, therefore, the time is stopped. However, the government gives us no case law to cite to that. The government doesn't say Campos doesn't apply to that. They just say counsel's or Mr. Perez's position is misplaced. If you look at this decision in Campos-Torres, there is nothing that delineates or says this only applies to crimes. NTAs are specifically opted out of our decision. What it did was it specifically addressed the law of 248 and 212 and said if it doesn't come under 212, then time is now stopped. If you look at the case law that's come out regarding the stop time rule and the issuance of NTAs, a majority of them deal with Section 305 of IRERA that addresses the OSC, the NACARA issues, and things like that. None of them specifically deal with criminal cases or matters of exclusion. Now, the IJ briefly in his decision in January 2003 indicated, well, because it's not exclusionary, it doesn't apply to us. Therefore, the NTA stopped the time. What we're saying is based on Campos-Torres and the other case, I believe I said it was Vianda-Ramono, those cases support the Petitioner's position that the NTA does not stop the time. There's been no indication from any other case that I've found that say the NTA stops the time. There's nothing the BIA has issued that says we are going to clarify Campos-Torres by saying Campos-Torres only deals with crimes and the stoppage of time. As the NTAs, they are handled in another manner. You don't have that. I say that the analysis under Campos-Torres is correct and is applicable to this case. As to the issue of voluntary departure, the government maintains that Mr. Perez cannot address the issue of the voluntary departure order because he did not exhaust his remedies or exhaust his procedures by not challenging it. It's Mr. Perez's position that he has voluntary departure because the BIA in its 2003 decision affirmed the decision of the IJ. The IJ's decision is quite clear. January 1 or January 3, 2003, the IJ goes through a lengthy analysis and then addresses voluntary departure and says I will follow the Board's prior decision and give Mr. Perez voluntary departure by posting a $500 bond within five days of this decision. Now, the government says, well, even if it's properly before this Court, Mr. Perez may have not posted the $500. That information is not in the administrative record. However, I did look at Mr. Perez's deportation file, and he provided me a copy of a cashier's check to INS that was supposedly submitted to them in January 2003. So our position is ñ Within the time period or not? It would appear that it was in the time period, Your Honor. It was or was not? It would have been. It was in January. And if I go on in the government's position that his voluntary departure bond must have been posted by March 3, 2003, he's clearly within the time frame. But again, that is not part of the administrative record. That is a matter that is dealt with the agency. And the only way to verify if he posted were to get a copy of his file. However, the normal practice with the IJs are you have five days to post. The order on the posting of the $500 bond is not stayed pursuant to the government's regulation. You either post it within the five days, not at the conclusion of the period, of the notice of appeal period, but the five days when the judge issues the order. So what we're saying is, number one, he complied with the requirements of securing voluntary departure. But number two, we're saying even ñ Counsel, can I interrupt you there? Counsel, can I interrupt you there? Yes. I want to go back just a minute. Do I understand that you have ñ you believe that you have evidence that he posted a $500 bond. Did he post it within the five days of the decision, or are you saying he posted it within the time for appeal? Your Honor, all I have is a ñ in my file is a copy of a cashier's check dated January ñ I can't remember the date as to whether it was timely filed with the decision of the IJ. I will point to the fact that the IJ's decision came out on January 3rd. The posting of ñ the check states that it was not posted until, I want to say, January 15th or 16th. Now, again, it's not unusual for us to get the decision of the IJ sent to us. And he would have had five days from the date we received it. Again, that's not part of our administrative record. So ñ Okay, but the check evidently was filed at least within January. I heard you say something about March, and I was just a little confused. Yes. The government maintains in its brief that the proper time for posting the check would have been March 4th, 2003. So if he wasn't timely within the five days of the order of the IJ, he would have been timely within the government's position that it must have been filed by March 3, 4, 2003. But ñ and, again, our position is he still has voluntary departure, even though the BIA did not address it. And I want to make clear that one of our positions, Your Honor, is this is not a streamlining decision. The Court will note this is a two-page decision by the Board where they address all of the issues. It would be our position that, if you note at the ñ I think it's page 3 of the AR, the Court notes, we affirm the decision of the IJ. The decision of the IJ was to grant him voluntary departure and deny him his request to apply for cancellation or removal. By saying they affirm the decision of the IJ, it's logical that the voluntary departure stands. The government asks us to speculate as to what the BIA would have done with it. And I think it's clear that the BIA ñ there is no need to speculate. The BIA stated they affirm the decision of IJ. So it's our position that Mr. Perez-Cruz has voluntary departure, can properly file the stay, and he still has it. That's all I have, Your Honor. Okay. Thank you. And if you need some rebuttal time, we'll give you that. When you're ready. May it please the Court. My name is Jennifer Lightbody, and I represent the Respondent. With respect to the first issue regarding the continuous physical presence, it's the government's position that the Court lacks jurisdiction to review Petitioner's challenges that he makes in his opening brief. And we submitted a 28-J letter this morning to the Court with respect to that issue. And the reason is because, on appeal to the Board, what he argued is that he entered the country in 1990 and therefore has seven years' continuous physical presence. He never challenged the stop-time rule in front of the Board. And because he didn't do that, he failed to exhaust his administrative remedies, depriving the Court of jurisdiction to consider the matter on review. However, even if this Court were to find that it had jurisdiction, the government submits that there is substantial evidence to support the immigration judge's decision that he didn't have seven years' continuous physical presence. And even under a de novo standard of review, the immigration judge's legal determination was correct because he became a lawful permanent resident March 19, 1996, and the notice to appear was served on him on June 19, 2000, four years and three months, far short of the seven years' continuous physical presence. And Petitioner's reading of the statute essentially reads out of the statute the very last sentence of subsection D-1229B, subsection D-1, which says that essentially whichever occurs earliest, meaning the notice to appear or being, I'm sorry, charged with a particular offense. And he was clearly served with the notice to appear. And while there are no published decisions, of course, in this Court, there are unpublished decisions following exactly what the statute does say. And for that reason, we first assert that there is no jurisdiction, but if the Court finds jurisdiction, it should affirm the immigration judge's decision on this issue. And of course you know you can't cite unpublished decisions to us at this time. Correct. Correct. And you just did. Well, I think my point is there are no published or unpublished decisions that I found that support the Petitioner's position. And my apologies. I didn't mean to. No, I understand. I shouldn't tease you. That's all right. Thank you. With respect to the voluntary departure issue, first of all, I think in the Court's order directed on August 17th, which was not issued by members of this particular panel, but it asked whether the Board's silence should be construed as an extension of the voluntary departure period, which implicitly, as I read it, says that the Court is suggesting that actually there was voluntary departure. Did the government appeal the grant of voluntary departure to the Board? No, I don't believe that they did. Then why should the Board be expected to say anything about it if it was not appealed to them? Well, typically in these cases the Board does issue a decision giving an individual an additional 30 days to voluntarily depart. But in this case that didn't happen. And I would submit to the Court that, first of all, the Court lacks jurisdiction to review a voluntary departure issue. Well, that may be right. It wasn't appealed. Either to the BIA and maybe not to us. Well, because it was a grant. Well, he didn't appeal it because he won the issue. But the government could have appealed it and the government didn't. Correct. So why is that even a relevant issue? I mean, it's there. It was granted and it was never appealed. Correct. So why doesn't he have voluntary departure? Well, the Board, of course, did not deny him voluntary departure, but it also did not extend involuntary departure. But there's an automatic extension whenever there's an appeal. It's stay. Automatic stay. Right. It's stay. There's an automatic stay so the time doesn't run. Well, the time. Let's just say it that way. I would submit to the Court that some of the time did run. Between the time that he was granted voluntary departure, which was, first of all, the IJA issued a decision January 3rd, 2003. He filed an appeal to the Board February 4th, which was out of time. Thirty-two days of his voluntary departure period had run at that time. Then the matter was the voluntary departure issue was stayed before the Board. He didn't ask for it to be stayed. He didn't ask for it to be reinstated. He didn't say anything other than he said, I was granted voluntary departure. That's the only thing he says in his brief to the Board. So then the Board issues its decision on December 10th, 2003. And then he files a petition for review in this Court, but does not seek a stay until January 7th. Twenty-eight days had run. When does he file his petition? He filed his petition on January 6th, but his stay request wasn't filed until January 7th. I assume you've read our decision in DESTA. Yes. And our practice has been by agreement, not only under DESTA, but by agreement, that as soon as he files a petition, there's an automatic stay entered. Isn't that correct? But he didn't seek a stay. Correct. But he didn't actually seek a stay. And he does not have to seek it. That is to say the stay of the time period is automatically entered as soon as that petition is filed with us. Isn't that correct? Yes, but I – perhaps I have a misreading of DESTA. I thought he had to move to stay removal, and that the motion to stay removal includes within it in the Ninth Circuit a motion for stay of voluntary departure. And it's the government's position that that stay then is when his voluntary departure period would have been stayed. But that period has – the voluntary departure period started running until he filed the stay, which was one day later, his motion for a stay. Under your daily calculations, does he have any time left? No. He filed his motion for a stay on the 60th day. So when – assuming that the government would prevail in this case, he would be required to leave on the day that the mandate would issue. He's used up his voluntary departure period would be our position. That is to say he can leave so long as he leaves prior to our mandate? Under voluntary departure? Right. The government's position is that we would be willing to go to mediation with respect to that issue to clarify that he does have voluntary departure. I'm not sure we need to mediate this one. Let me make it clear as to where we are. Assuming that he has any days left whatsoever, which I guess we can run through and do the calculation, but assuming he has any days left whatsoever, if we issue an order affirming on the merits what's gone below, which means then that he has voluntary departure, he has up until the time our mandate issues in which to voluntarily depart. Is that right? Yes. We would – our position would be that the board actually did not deny him voluntary departure. It certainly did not because it wasn't even appealed to them. And does he have any time left at all under your calculations? Under my calculations, he doesn't have any time left. You mean it's already expired? It didn't already expire, but he would have to leave the day, according to my mathematical calculation, that the 60th day ran when he filed the motion for stay, which included a stay of voluntary departure, so he would have to leave on the day of the mandate. Okay. So I'm going to – just to make sure, I want to make you clear, I am pinning you down on this, that is to say, if we affirm on the merits but make clear that as far as we're concerned, voluntary departure has always been there and he's entitled to it, and our mandate issues, let's say, 30 days or 60 days from the time of our decision, he has whatever that time period is in which to voluntarily depart. Is that right? This is not hard. Yes. I mean, we would be of the opinion that he does, but that it was not extended. And, again, I'm assuming that my mathematical calculations are correct. No, I don't want an assumption. I want a statement. Under your mathematical – Based upon my calculations, yes, he would still have that time. Okay. What do we do with this suggestion? And I'm not sure it's more than a suggestion that his bond was not timely filed. We have nothing in the record in front of us on this point. That's correct, and the Court's decision is based on the record before it. We don't have any evidence whether he paid it timely or not. And why are you suggesting, then, that he didn't do it timely? I mean, I'm looking at page 11 of your brief. It says, Instead, the IJ's order of voluntary departure expired upon his failure to post a voluntary bond within five days. Why are you stating that? It's not in the record. I agree, and I would submit that Petitioner's counsel had indicated that he had until March 4th to post a bond, but I think the brief clearly states five days. The brief says that, but the brief also says he didn't file timely. I mean, how do you know this? It's not in the record. How do we know this? Well, I would read it. It says, Indeed, had Petitioner failed to post the bond of voluntary departure in the order of five days. Yeah, but the first sentence says he failed. The sentence before the indeed sentence. Yeah, the post bond. At least that's how I read it. You can back off and say that's not what it says. Yeah, I'm not sure that it exactly is. In fact, it has an if. Okay, I'm perfectly willing to entertain an if. I mean, if he didn't file on time, okay. If he didn't file on time, okay. Right, yeah, I mean, and I guess if, well, I agree that the position isn't very clear, but he apparently has some evidence that he did post the bond, and I don't know whether it was timely or not, but our position is that the voluntary departure period was not extended, that the immigration judge did give him 60 days to voluntarily depart, although he didn't say that based on the calculation that January to March it was 60 days. I think we're on the same page with that. Okay. Thank you, Your Honor. Thank you. Any rebuttal? Very briefly. Your Honor, with regards to the timelines and whether he still has any voluntary departure, I believe that I heard the government say that the decision was issued by the IJ on January 3rd, 2003, and Mr. Perez would have had to file his notice of appeal by, well, that he filed it on November 4th, 2003. I noted AR-35, the decision. Counsel, wasn't it filed in March? Did you say November? No, no, no. If I understand government's counsel correctly, in their computation of my 60 days for my client to have his voluntary departure, they indicated that the IJ's decision was dated January 3rd. He would have had to have filed his notice of appeal to the BIA by February 2nd or 3rd to timely file. I note at AR-35 of the record, the decision was not sent to counsel until January 13th, 2003, so there would be an additional time to it. As to the issue, and I totally agree with counsel, we don't know if FOND was properly posted. I'll concede that fact. We don't have it in the AR, and as I indicated, I only have a copy of the check. So I would concede that we don't even know if it was properly posted. Yes, sir. Counsel, on page 11 of your brief, you cite us to an Eighth Circuit case and to a First Circuit case with respect to voluntary departure. And I'd like to point out to you, for your future use of either of those cases, you should know that the Eighth Circuit case, Lulu, although the language you rely on appears in the printed volume of the Federal Reporter, the printed volume came out before the rehearing was done in that case, and the language you rely on was specifically eliminated and deleted. The Eighth Circuit now has joined the Ninth, the Nesta decision, in a case called Rife. I can give you a cite to that. 374 Fed 3rd 616, Rife, R-I-F-E. Although we in the Eighth Circuit require two motions, a motion to stay, removal, and a separate motion for voluntary departure, stay voluntary departure. Your reliance on Valesquez v. Ashcroft in the First Circuit case, that case was specifically abrogated by the First in July, pardon me, in June of this year, in a case called Bokova 412 Fed 3rd 257. So if you're going to rely on those cases in the future, you better be ready to answer for the succeeding cases. Truly noted, Your Honor.  Truly noted. Thank you, Your Honor. And you just heard not only from an expert on the Eighth Circuit, you heard from the Eighth Circuit itself. And I will truly note that, Your Honor. Thank you. Okay. Thank both counsel for your argument in this case. The case of Perez-Cruz v. Ashcroft is now submitted for decision, and the Court is now in adjournment.
judges: Hansen, W. Fletcher, Bybee